UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:                          )
                                )
    JAMES E. MELTON,         )   Case No. 07-03045-TOM-13
                                )
    Debtor.                  )

*NOT INTENDED FOR PUBLICATION*

MEMORANDUM OPINION

This matter is before the Court following a hearing held on February 28, 2008 on the Debtor's Objection to Claim #17 of William Robinson, as amended (the "Objection to Claim") (doc. nos. 33, 34), filed by James E. Melton, the Debtor. Appearing at the hearing was counsel for the Debtor, the Debtor, William E. Robinson, Jr. and Shea Patrick, Staff Attorney for the Standing Chapter 13 Trustee. The Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b). This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A). This Court has considered the pleadings, the arguments of counsel, the testimony of the Debtor, the testimony of William E. Robinson, Jr. (the "Claimant"), and the law, and finds and concludes as follows.[1]

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Rule 7052 and Rule 9014(c) of the Federal Rules of Bankruptcy Procedure.

1

# FINDINGS OF FACT[2]

The Debtor entered into a contract with the Claimant on October 15, 2006 pursuant to which the Debtor agreed to perform certain furnace and duct work and the Claimant agreed to pay $2,250.00 for the Debtor's services and the materials required. The work was performed on or about October 15, 2006 and the funds paid. Some time after the work was completed, a dispute arose between the Debtor and the Claimant over whether all of the work was completed and over certain damages the Claimant alleges the Debtor caused while performing the work. This resulted in the Claimant filing a claim in small claims court seeking $2,500.00 in damages and $135.00 for court costs on June 12, 2007. This action, however, was stayed, pursuant to section 362 of the Bankruptcy Code, when the Debtor filed for bankruptcy protection on July 11, 2007.

At the time of filing of this bankruptcy case, the Debtor listed, on Schedule F, an unsecured debt owed to the Claimant in the amount of $1.00, disputed. The Clerk's Office sent a Notice of Chapter 13 Bankruptcy Case, Meeting of Claimants, and Deadlines to all scheduled Claimants. The notice set November 13, 2007 as the bar date for filing proof of claims.

Contemporaneous with filing the bankruptcy case, the Debtor filed his Chapter 13 Plan (the "Plan") (doc. no. 4). The Plan was amended on August 6, 2007 (doc. no. 15) and again on September 18, 2007 (doc. no. 21) though each plan proposed a 100% payout to unsecured Claimants. The Plan, as amended, was confirmed on September 21, 2007 and provided for 100% payment to unsecured Claimants.

---

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir.

2

Post-confirmation, on November 13, 2007, the bar date, the Claimant filed an unsecured claim, Claim #17, in the amount of $2,500.00 and attached a copy of the contract and copies of photographs along with an index of the photographs. The Claim sought reimbursement of the contract price paid by the Claimant to the Debtor, $2,250.00, in addition to $135.00 for filing fees in small claims court and $115.00 for "Damages Occurred While Service Performed."

On January 21, 2008, the Debtor filed this Objection to Claim pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure and the matter was set for hearing on February 28, 2008. At the hearing both the Claimant and the Debtor testified regarding this dispute.

In essence, this is a contract dispute. The Claimant testified that, prior to any work being done, heat was blowing in only one room in his home but not in any other room. The Claimant initially contacted One Source about having the problem corrected. One Source provided the Debtor with an estimate for three different replacement plans, $5,000.00 being the lowest priced plan. The Claimant testified that he could not afford that and then contacted the Debtor, who his cousin recommended. The Debtor testified at trial that he does heat and duct work on the side and has been in that line of work for over twenty years. The Debtor inspected the property, informed the Claimant that the duct work was completely collapsed, and that, at a minimum, the duct work needed to be replaced. The Debtor told the Claimant at that time that by simply replacing the duct work the Debtor could not guarantee that that would correct the problem because the gas furnace was over forty (40) years old and was not blowing a strong current. The Claimant opted to have only the duct work done and not to replace the furnace. The Claimant

---

1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

did not ask the Debtor to identify or physically show him exactly what would be replaced with both parties simply using the term "duct" work to refer to the work to be completed.

The Claimant then wrote up a contract, on the Debtor's estimate form, and both parties signed it. The contract between the parties, dated October 15, 2006, specifies the work to be performed as follows: "Demolish and remove old duct and furnace[3]. Replace with new duct on the existing working furnace. All material furnished by contractor starting date 10/15/2006 with no complications and completion on 10/17/2006." Testimony at trial indicated that the description of "work performed" and indeed all of the writing, other than the Debtor's signature, was done by the Claimant. Both the Claimant and the Debtor signed the contract.

At trial there was no dispute that generally the work was performed during the applicable time period, that the Debtor provided all of the material and that the Claimant paid the Debtor in full. The only dispute was to whether the Debtor completed all of the work under the contract. The Claimant asserts that the Debtor did not remove all of the old duct, that he did not replace all of the old duct and that, although he had heat in one room before the repairs, now he has no heat in any room.

With respect to the Claimant's allegation that the Debtor did not remove and replace all of the duct work, the Court finds that what occurred appears to be the result of miscommunication or lack of technical understanding. The Debtor testified that he has been

---

[3] The Claimant testified that he had two furnaces, one that was functioning and one that was not functioning. The functioning unit is located next to the house and the non-functioning unit is located under the house. The contract called for one furnace to be removed, presumably the non-functioning furnace, and for new duct work to be installed on the existing working furnace. Since there was no testimony as to whether the non-functioning furnace was removed, the Court will assume that it was and that this particular point is not in dispute.

Case 07-03045-TOM13    Doc 39    Filed 03/31/08    Entered 03/31/08 14:08:28    Desc Main
Document    Page 4 of 7

doing heating and duct work as a side job, and is licensed, for over twenty years. The Claimant has no experience with heating and duct work. The Debtor testified that he agreed to remove and replace the old duct and that that is exactly what he did. The duct work that was not replaced, those pipes in the pictures submitted by the Claimant, is not duct work but in fact is a trunk line. The Court's understanding, from testimony at trial, is that the pipes attached directly to the furnace are trunk lines to which duct lines are attached. The pictures at trial show that the trunk lines were not replaced but that the duct lines were replaced. Because the Claimant and Debtor did not contract to remove and replace the trunk lines but only to remove and replace the duct work, the Court finds the Debtor performed all of his duties under the contract. The Court believes this dispute is the result of a misunderstanding stemming mainly from the Claimant's lack of familiarity with the technical terms used in the heating industry. Additionally, the Claimant opted for an "easy fix" in the hopes it would resolve the heating problem. It did not and that is unfortunate but it is not the fault of the Debtor. In all likelihood, based upon the Debtor's experience and opinion, a new furnace is the solution, a costly endeavor.

## **CONCLUSIONS OF LAW**

Under Alabama law, when a contract is ambiguous, courts construe ambiguous language against the party who drafted the contract. See Knepp v. Credit Acceptance Corp. (In re Knepp), 229 B.R. 821 (Bankr. N.D. Ala. 1999). Here there is no dispute that the description of the work to be performed, and indeed all writing on the contract other than the Debtor's signature, is the Claimant's handwriting. The Court does not believe the wording of the contract, specifically that the Debtor will "[d]emolish and remove old duct and furnace" and "[r]eplace with new duct on the existing working furnace", is ambiguous. However, even if the Court were to find the use of

5

Case 07-03045-TOM13    Doc 39    Filed 03/31/08    Entered 03/31/08 14:08:28    Desc Main
Document      Page 5 of 7

the word "duct" to be ambiguous such that it could reasonably be read to include both the duct and trunk work, the contract must be construed against the Claimant, the party who drafted the contract. That the Claimant did not know that there was a difference between duct and trunk work is unfortunate but the Claimant chose the description contained in the contract and now must live with it.

In addition to the above allegations, the Claimant also asserts that the Debtor and his crew damaged the Debtor's gas line. Pictures of the gas line were admitted at trial and the Claim includes a charge of $115.00 for damages that occurred while the Debtor performed his work. The Claimant testified at trial that he has not had anyone look at the gas line nor had anyone give him an estimate of the cost to repair the line. The $115.00 charge included in the Claim is the Claimant's estimate of the cost to repair the damaged line. The extent or type of damage was not explained at trial and the Court is unable to discern the damage or its origin simply by reviewing the photographs introduced at trial.

The Debtor contends that the gas line was damaged when he arrived on the scene and that he informed the Claimant of the damage, which the Claimant disputes. In support of his allegation that the Debtor damaged the gas line, the Claimant testified that he had heat in one room prior to the work being done and now has no heat in any room. The Claimant, however, admitted at trial that he doesn't use the furnace because the heat is not working and he is keeping his gas bill to a minimum of about $25.00-$30.00 per month. Presumably, the lack of heat is due to the need for a new furnace as the Claimant still has a working gas line, evidenced by the fact that the Claimant still has a monthly gas bill. Based on the fact that the gas charges continue to accrue and based on the testimony of the Debtor, that the damage occurred prior to him doing

6

any work, which the Court finds credible, the Court finds that the damage, if any, to the gas line occurred before the Debtor ever arrived on the scene.

Finally, and most damaging to the Claimant's allegations, is the fact that AFTER the work was done and the alleged damage occurred and AFTER the Claimant had an opportunity to inspect the work and check for any damage, the Claimant paid the Debtor the remaining $550.00[4] balance due on the contract. If the work was unsatisfactory or incomplete, the Claimant should not have paid the remaining balance until the work was done to the Claimant's satisfaction.

Therefore, based on the foregoing, the Court finds that the Debtor's Objection to Claim is due to be sustained and the Claim disallowed in its entirety. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Objection to Claim is **SUSTAINED** and the Claim, Claim Number 17, is disallowed.

Dated this the 31st day of March, 2008.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

---

[4] Though the contract calls for an initial deposit of $1,125.00 with $1,125.00 paid upon completion, testimony at trial indicated, and there was no dispute, that the Claimant made a $1,700.00 initial down payment and then paid the remaining $550.00 after the work was completed.

7